FILED
2021 OCT 27 PM 2:33
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **PARK CITYZ REALTY, LLC, a Utah limited liability company; et al.,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:20-cv-00522-JCB** |
| **ARCHOS CAPITAL, LLC, a Delaware limited liability company; et al.,** | |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to

Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[1]  Before

the court are: (1) Defendants Archos Capital, LLC ("Archos"), Kevin Howard ("Mr. Howard"),

and Victoria Howard's ("Ms. Howard") (collectively, "Defendants") motion for summary

judgment;[2] (2) Plaintiff Park Cityz Realty, LLC's ("PCR") motion for summary judgment;[3] and

(3) the determination of the amount of sanctions awards under two prior orders.[4]  The court has

carefully reviewed the parties' written memoranda on the cross-motions for summary judgment

and regarding sanctions.  Under DUCivR 7-1(f), the court concludes that oral argument is not

---

[1] ECF No. 18.

[2] ECF No. 40.

[3] ECF No. 50.

[4] ECF Nos. 47, 59.

necessary on the cross-motions for summary judgment or sanctions issues and, therefore, decides the motions and sanctions issues on the written memoranda.  Based upon the analysis set forth below, the court grants Defendants' motion for summary judgment, denies PCR's motion for summary judgment, and dismisses PCR and Plaintiff John M. Kim's ("Mr. Kim") (collectively, "Plaintiffs") claims in this action with prejudice.  Also as shown below, the court awards sanctions to Plaintiffs against Ms. Howard in the amount of $3,387.90 and awards sanctions to Ms. Howard against Plaintiffs and their counsel in an amount to be determined.

## BACKGROUND

The following background facts apply to the issues currently before the court.  First, the court provides the background facts relevant to the motions for summary judgment.  Second, the court sets forth the background facts relevant to the issue of the sanctions awards.

## I.   Summary Judgment Background

On May 9, 2020, PCR entered into a lease agreement ("Lease") with Archos for the property located at 1315 Mellow Mountain Road, Park City, Utah 84060 ("Property").[5]  The term of the Lease was from June 1, 2020, through July 31, 2020.[6]  The Lease contained a "Sale of Property" provision, which indicated that the Property was currently listed for sale.[7]  By

---

[5] ECF No. 2, Exhibit A.  According to the complaint, PCR is a Utah limited liability company, and its sole member is Mr. Kim.  ECF No. 2, ¶ 3.  Although PCR entered into the Lease, Mr. Kim and his wife were the owners of the Property.  ECF No. 40-2 at 5 (Mr. Kim deposition at 12:24-25, 13:1-4, 16-19).  The complaint also provides that Archos is a Delaware limited liability company, and its sole member is Mr. Howard.  ECF No. 2, ¶ 6.  Although Archos leased the Property, Mr. Howard and Ms. Howard resided there during the Lease term.

[6] ECF No. 2, Exhibit A at 1.

[7] *Id*. at 3.

entering the Lease, Archos acknowledged and agreed that PCR's real estate agent would show the Property to potential buyers while Mr. Howard and Ms. Howard were living there.[8]  The Lease required PCR and/or its real estate agents to provide reasonable notice of no less than 2 hours prior to any showing and indicated that PCR would attempt to provide at least 24 hours' notice whenever possible.[9]  Archos agreed to comply with each reasonable request to show the Property or, if Archos could not reasonably accommodate the request, provide an alternate showing time within close temporal proximity to the original request.[10]

Mr. Kim and his wife had listed the Property for sale[11] with the asking price of $3,495,000.[12]  On or about October 9, 2020, Mr. Kim and his wife closed the sale of the Property[13] for $3,350,000.[14]

Prior to the sale of the Property, the parties had a dispute over the "Sale of Property" provision of the Lease, which led to Plaintiffs filing a complaint against Defendants on July 21, 2020,[15] in which Plaintiffs assert four claims: (1) breach of contract, (2) intentional interference

---

[8] *Id*.

[9] *Id*.

[10] *Id*.

[11] ECF No. 40-2 at 6 (Mr. Kim deposition at 16:1-3).

[12] *Id*. (Mr. Kim deposition at 17:6-8).

[13] *Id*. at 8 (Mr. Kim deposition at 22:21-23).

[14] *Id*. (Mr. Kim deposition at 22:10-12).

[15] ECF No. 2.

with economic relations, (3) promissory estoppel, and (4) fraudulent representation.[16]  The allegations from each cause of action are briefly described below.

Plaintiffs' first and second causes of action are generally based upon the allegation that Defendants—and, specifically, Mr. Howard—failed to accommodate requests for showings of the Property on July 2-5, 10, and 15, 2020.[17]  PCR contends that Archos's alleged breach of the Lease "prevented [PCR] from showing the [Property] to prospective buyers during a real estate economic explosion in Park City, Utah," and caused PCR to suffer "severe economic damages . . . from the loss of the ability to sell the [Property] for an unprecedented profit."[18]  Plaintiffs assert that Defendants intentionally interfered with the sale of the Property, causing the loss of "the opportunity to find prospective buyers to purchase the [Property]."[19]

Plaintiffs' third cause of action (i.e., promissory estoppel) is based upon the allegation that Plaintiffs accepted Defendants' offer to terminate the Lease early and move out of the Property.[20]  Plaintiffs maintain that Mr. Howard and Ms. Howard failed to move out early as promised, thereby causing Mr. Kim and his wife to travel to Park City from California, "spend money on a temporary home in Park City . . . , cancel or change numerous important events and

---

[16] *Id.*, ¶¶ 36-64.

[17] *Id.*, ¶¶ 40-42, 47.

[18] *Id.*, ¶ 43.

[19] *Id.*, ¶ 50.

[20] *Id.*, ¶ 54.

meetings, . . . experience the mental anguish of not knowing when they [would] be able to repossess the [Property]," and experience "severe emotional and financial harm."[21]

Plaintiffs' final claim for fraudulent representation is based upon the allegation that Mr. Howard falsely stated to Plaintiffs that he had been exposed to COVID-19.[22]  Plaintiffs contend that they "reasonably relied upon [Mr. Howard]'s malicious and false statement that he had been exposed to someone with a positive case of COVID-19, and Plaintiffs could not obtain access to the [Property], nor show the [Property] to prospective buyers."[23]  Plaintiffs further contend that they were "likely . . . unable to consummate any sale of the [Property] due to disclosure of COVID-19 exposure at the [Property], which create[d] a negative cloud of risk by the mere mention of its name."[24]  Plaintiffs assert that they "lost and continue[d] to lose the opportunity to show and ultimately sell the [Property] to multiple potential buyers due to" Mr. Howard's alleged false representations, "which . . . cast a negative cloud over the [Property] and . . . resulted in a diminution in value of the [Property]."[25]

On August 13, 2020, Defendants answered Plaintiffs' complaint.[26]  Defendants also asserted counterclaims for breach of contract against PCR and trespass against all Plaintiffs.[27]

---

[21] *Id.*, ¶¶ 55-57.

[22] *Id.*, ¶ 59.

[23] *Id.*, ¶ 62.

[24] *Id.*

[25] *Id.*, ¶ 63.

[26] ECF No. 14.

[27] *Id.* at 11-12, ¶¶ 19-29.

The court entered a scheduling order on September 3, 2020, which, among other things, set the fact discovery deadline for March 12, 2021.[28]  Plaintiffs served their initial disclosures on September 18, 2020.[29]  With respect to damages, Plaintiffs listed several categories of damages that they "intend[ed] to explore during discovery."[30]  However, Plaintiffs did not provide a computation of damages.[31]  Instead, Plaintiffs stated that they were "unable to provide a specific computation of damages at this time because the parties have not yet conducted discovery on this matter."[32]

Plaintiffs sent an email to Defendants on February 24, 2021 ("February 24 Email") indicating that Plaintiffs estimated their damages to be the difference between the listing price of the Property and the eventual sale price of the Property ($145,000), plus the cost of the furniture sold with the Property ($25,000).[33]  Plaintiffs stated that "[u]ltimately, there are at least $170,000 in actual damages."[34]

---

[28] ECF No. 22 at 2.

[29] ECF No. 40-3.

[30] *Id*. at 6.

[31] *Id*.

[32] *Id*.

[33] ECF No. 46-2 at 6 (Exhibit A at 1).

[34] *Id*.

On March 4, 2021, Defendants asked Plaintiffs to supplement their initial disclosures by providing a computation of damages.[35]  The following day, Plaintiffs responded by stating that they had "no plans to supplement their initial disclosures at this time."[36]

During discovery, Defendants requested production of "all documents and communications relating to the damages [Plaintiffs] claim were caused by or otherwise are the responsibility of Defendants."[37]  Plaintiffs responded to Defendants' request on March 5, 2021.[38] Plaintiffs objected to the request "as vague, ambiguous, broad, and overly burdensome to the extent that it relies on the term 'damages,'" which was not defined in Defendants' discovery requests.[39]  Plaintiffs eventually stated that they "cannot and will not produce documents in response to" Defendants' request.[40]

During his March 9, 2021 deposition, Mr. Kim admitted that he could not identify anyone who would have bought the Property at a better price if that person had seen the Property on the

---

[35] ECF No. 40-4 at 2.

[36] *Id.* at 1.

[37] ECF No. 40-5 at 6.

[38] *Id.*

[39] *Id.*

[40] *Id.*

occasions when he claims Mr. Howard denied access to the Property.[41]  Mr. Kim's counsel also

stipulated that Mr. Kim could not make such an identification.[42]

On March 11, 2021, Defendants deposed Plaintiffs' real estate agents, Kevin Crockett

("Mr. Crockett") and Lana Harris ("Ms. Harris").[43]  Mr. Crockett testified that he could neither

recall a time when Mr. Howard rejected a showing request for the Property nor recall an instance

in which he told Mr. Kim that Mr. Howard had rejected a showing request for the Property.[44]

Mr. Crockett also testified that his office did not keep accurate records of showing requests for

the Property.[45]  For her part, Ms. Harris testified that she could not recall any requests for

---

[41] ECF No. 40-2 at 24 (Mr. Kim deposition at 86:5-13).  Plaintiffs contend that this portion of
Mr. Kim's deposition testimony is in dispute because it mischaracterizes Mr. Kim's testimony.
However, Plaintiffs do not, and cannot, dispute that Mr. Kim testified that he could not identify
any specific potential buyer for the Property.  Instead, Plaintiffs rely upon their arguments
supporting their theory of the case (i.e., but for Mr. Howard's alleged denial of access to the
Property, the Property could have been seen by prospective buyers).  That tactic is insufficient to
create a genuine issue of material fact to avoid summary judgment.  *Pasternak v. Lear Petroleum
Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere
argument of an opposing party's case cannot be utilized to avoid summary judgment.").

[42] ECF No. 40-2 at 25 (Mr. Kim deposition at 90:16-91:15).

[43] ECF Nos. 40-6, 40-7.

[44] ECF No. 40-6 at 12 (Mr. Crockett deposition at 41:17-22).  Even though Plaintiffs cannot
dispute that this accurately reflects Mr. Crockett's deposition testimony, they again rely upon
their theory of the case to argue that this portion of Mr. Crockett's deposition testimony is in
dispute.  That argument does not create a genuine issue of material fact.  *Pasternak*, 790 F.2d at
834.

[45] ECF No. 40-6 at 23 (Mr. Crockett deposition at 83:6-22).

showings on the dates Plaintiffs claim Mr. Howard denied access to the Property or telling Mr.

Kim that Mr. Howard had rejected showing requests for the Property on those dates.[46]

     Plaintiffs produced certain documents to Defendants on March 12, 2021, the final day of

fact discovery ("March 12 Production").[47]  The March 12 Production is almost exclusively

comprised of various articles from internet sources concerning the Park City, Utah real estate

market generally but contains nothing about the Property specifically.[48]

     After fact discovery closed, Defendants moved for summary judgment on all of Plaintiffs'

claims on May 20, 2021.[49]  On July 14, 2021, PCR moved for summary judgment on its breach

of contract claim against Archos.[50]

## II.    Sanctions Background

     On May 11, 2021, Plaintiffs filed a motion for sanctions in response to Ms. Howard's

failure to appear at a properly noticed deposition.[51]  After the court struck Plaintiffs' motion for

being noncompliant with DUCivR 37-1(a)(3) and 37-1(a)(4),[52] Plaintiffs refiled a proper

---

[46] ECF No. 40-7 at 8-9, 11 (Ms. Harris deposition at 24:4-26:25, 35:10-23).  Again, although Plaintiffs cannot dispute that this accurately reflects Ms. Harris's deposition testimony, they rely upon their theory of the case to argue that this portion of Ms. Harris's deposition testimony is in dispute, which is not sufficient to create a genuine issue of material fact.  *Pasternak*, 790 F.2d at 834.

[47] ECF No. 40-11 at 2, ¶ 7.

[48] *Id*.; ECF No. 46-3.

[49] ECF No. 40.

[50] ECF No. 50.

[51] ECF No. 38.

[52] ECF No. 39.

short-form discovery motion on May 21, 2021.[53]  Plaintiffs sought $11,636.40 ("First Request") in sanctions "along with [all fees/costs] associated with preparation, filing, and determination of the [sanctions] motion itself."[54]  Ms. Howard opposed the motion.[55]  During oral argument on Plaintiffs' motion, held on June 4, 2021, the court expressed great doubt as to the reasonableness of imposing $11,636.40 in sanctions for a single missed deposition that was conducted over video—which precluded travel costs—and for which Plaintiffs had advanced warning that Ms. Howard would not appear.  Specifically, the court stated its belief to Plaintiffs' counsel that requesting more than $11,000 for a missed Zoom deposition was "steep."[56]  The court then asked Plaintiffs' counsel how it could cost "$11,000 for basically a six-minute put on the record for failure to appear."[57]  Plaintiffs' counsel responded by stating that he "thought that it would be best to put in everything that [Plaintiffs' counsel had] spent preparing" for the deposition and for responding to Ms. Howard's motion for protective order that Ms. Howard had filed shortly before her deposition.[58]  Plaintiffs' counsel also stated that Plaintiffs were "reserving [their] right by asking for what [they] believe is reasonable."[59]  At the conclusion of the hearing, the court took the issue under advisement.

---

[53] ECF No. 41.

[54] ECF No. 41-2 at 14 (Exhibit 2 at 1).

[55] ECF No. 43.

[56] June 4, 2021 hearing at 24:4.

[57] *Id*. at 24:6-7.

[58] *Id*. at 25:13-14.

[59] *Id*. at 25:19-20

On June 25, 2021, the court issued a Memorandum Decision and Order granting in part and denying in part Plaintiffs' short-form discovery motion for sanctions ("First Order").[60]  The court imposed sanctions but found unreasonable Plaintiffs' request for $11,636.40.  The court concluded that Plaintiffs were not entitled to the full amount of expenses they sought because the full amount included costs that were not "caused by" Ms. Howard's failure to appear, as Fed. R. Civ. P. 37(d)(3) requires.  Specifically, the court determined that all "costs related to opposing Ms. Howard's motion for protective order," costs for "preparation time" which "occurred days before" the missed deposition, and costs associated with the firm's decision to have additional counsel work on an assignment, were costs not incurred because of Ms. Howard's absence.[61] The court delineated reasonable expenses caused by Ms. Howard's failure to appear as follows: (1) the costs of the court reporter; (2) the costs "associated with preparing and filing the 500-word motion"; and (3) the costs of one attorney's attendance at oral argument on the motion.[62] The court ordered Plaintiffs to send to Ms. Howard, within 14 days of the First Order, a cost memorandum detailing the amount of the award.  Thereafter, the parties had 14 days to stipulate to the amount of the expenses awarded.  In the event that the parties could not stipulate, the court ordered Plaintiffs to promptly file a cost memorandum with the court.  The court further ordered that Ms. Howard would have 7 days thereafter to file any response.

---

[60] ECF No. 47.

[61] *Id*. at 8-9.

[62] *Id*. at 9.

The parties were unable to stipulate to the sanction amount, and, on July 27, 2021, Plaintiffs filed a memorandum of costs.[63]  In their memorandum of costs, Plaintiffs asked the court to award sanctions in the amount of $14,365.80 ("Second Request"), which was $2,729.40 *more* than the amount the court already said was "steep" and was purportedly based on only the costs necessary to prepare, file, and argue a 500-word short-form motion.  On August 4, 2021, Ms. Howard filed an objection to Plaintiffs' memorandum of costs.[64]  Ms. Howard objected to the total number of hours expended on drafting and arguing a 500-word motion, as well as to the attorneys' billing rates.  Ms. Howard proposed an award of sanctions in the amount of $3,426.90.

After considering Plaintiffs' memorandum of costs and Ms. Howard's objection, the court issued a Memorandum Decision and Order on September 15, 2021, in which the court stated its intention to impose sanctions against Plaintiffs under the court's inherent authority and/or against Plaintiffs' counsel under 28 U.S.C. § 1927 ("Second Order").[65]  The court concluded that Plaintiffs' conduct in seeking an amount of sanctions more than what the court had already determined was unreasonable manifested bad faith and multiplied the proceedings.  The court also concluded that Plaintiffs included expenses in the Second Request that were not authorized by the First Order.  Based upon those conclusions, the court stated its intention to use its inherent authority to impose sanctions against Plaintiffs *sua sponte*.  For the same reasons, the court also determined that Plaintiffs' counsel unreasonably and vexatiously multiplied these proceedings.

---

[63] ECF No. 51.

[64] ECF No. 55.

[65] ECF No. 59.

Accordingly, the court stated its intention to impose sanctions against Plaintiffs' counsel under

§ 1927.  Rather than directly awarding Ms. Howard sanctions for Plaintiffs' and their counsel's

conduct, the court stated that it intended to reduce the originally ordered sanctions award in favor

of Plaintiffs to zero.

The court then acknowledged that whenever sanctions are intended to be imposed under

the court's inherent authority and § 1927, the court is required to give the sanctioned party and

counsel notice and an opportunity to be heard.  To provide for that notice and opportunity to be

heard, Plaintiffs and their counsel were ordered to file a brief consisting of no more than 10

pages total by September 29, 2021, explaining why the court should not sanction them for their

conduct.

Plaintiffs and their counsel filed their brief on September 29, 2021.[66]  Plaintiffs and their

counsel argue that sanctions against them are improper for the following reasons.  First, Plaintiffs

and their counsel argue that the First Request is an inappropriate benchmark because: (1) the

First Request and the Second Request cover different underlying actions; (2) the court never

evaluated the billing entries for the First Request "and thus has no reasonable or rational basis to

support its conclusory statements that the First Request is unreasonable";[67] and (3) the court

never explicitly ordered that the Second Request must be less than the First Request.  Second,

Plaintiffs and their counsel argue that the Second Request is reasonable and included only those

expenses that were allowed by the court under the First Order.  Finally, Plaintiffs and their

---

[66] ECF No. 60.

[67] *Id*. at 4-5.

counsel maintain that the court's proposed sanctions award in the Second Order is procedurally inappropriate because it is punitive instead of compensatory in nature.

## ANALYSIS

Below, the court: (I) sets forth the standards for summary judgment; (II) addresses the parties' cross-motions for summary judgment; and (III) addresses the amount of the sanctions awards under the First Order and the Second Order.  Based upon the following analysis, the court grants Defendants' motion for summary judgment, denies PCR's motion for summary judgment, and dismisses Plaintiffs' claims in this action with prejudice.  The court also awards sanctions for Plaintiffs against Ms. Howard in the amount of $3,387.90 and for Ms. Howard against Plaintiffs and Plaintiff's counsel in an amount to be determined.

## I.    Summary Judgment Standards

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "A genuine issue of fact exists only where 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[68]  "Thus, the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[69]

In evaluating a motion for summary judgment, the court "view[s] the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's

---

[68] *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[69] *Id.* (quoting *Anderson*, 477 U.S. at 251-52).

favor."[70]  "'The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.'"[71]  If the movant does not bear the burden of proof at trial as to the claims for which it seeks summary judgment, then the movant "may make its prima facie demonstration by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim."[72]

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant."[73]  To satisfy its burden, "the nonmovant must identify facts 'by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.'"[74]  "These facts must establish, at a minimum, an inference of the presence of each element essential to the case."[75]  Entry of summary judgment is required,

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is

---

[70] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

[71] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)).

[72] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

[73] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp.*, 477 U.S. at 324) (quotations and other citations omitted); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

[74] *Savant Homes, Inc.*, 809 F.3d at 1137 (quoting *Libertarian Party of N.M.*, 506 F.3d at 1309).

[75] *Id.* at 1137-38 (quotations and citations omitted).

entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.[76]

## II.  Motions for Summary Judgment

Proving damages[77] is an essential element for each of Plaintiffs' claims.[78]  As shown below, Plaintiffs fail to establish that necessary element because: (A) Plaintiffs' damages evidence must be excluded under Fed. R. Civ. P. 37(c)(1); and (B) even if the court did not exclude that evidence, Plaintiffs fail to carry their burden to identify sufficient evidence to establish the fact of damages.  Because Plaintiffs have not established a required element for each of their claims, Plaintiffs' claims fail as a matter of law.  Therefore, the court grants Defendants' motion for summary judgment,[79] denies PCR's motion for summary judgment, and dismisses Plaintiffs' claims with prejudice.

---

[76] *Celotex Corp.*, 477 U.S. at 322-23 (internal quotation marks omitted).

[77] Unless used as a term of art in a discussion of breach of contract claims, "damages" generically refers to some loss or injury when used in this Memorandum Decision and Order.

[78] *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014) (breach of contract); *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 337 (Utah 1985) (intentional interference with economic relations); *Larsen v. Exclusive Cars, Inc.*, 97 P.3d 714, 716 (Utah Ct. App. 2004) (fraudulent misrepresentation); *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174-76 (Utah Ct. App. 1993) (promissory estoppel).

[79] In their motion for summary judgment, Defendants raise the issue of standing.  Defendants contend that Plaintiffs cannot demonstrate an injury-in-fact because their damages claims are speculative in nature.  The court acknowledges that there may be genuine standing issues here, but because those issues are intertwined with the merits of Plaintiffs' claims, the court proceeds to the merits of those claims.  Therefore, the court declines to reach the portion of Defendants' motion seeking summary judgment for lack of standing.  *See, e.g.*, *Elektra Indus., Inc. v. Honeywell, Inc.*, 58 F.R.D. 118, 120 (N.D. Ill. 1973) ("Where jurisdictional issues are inextricably intertwined with the merits of the case it is proper for the court to deny a motion to dismiss or for summary judgment for want of subject matter jurisdiction on the basis that there

### A.        Plaintiffs' Damages Evidence Is Excluded Under Rule 37(c)(1).

Defendants argue that Plaintiffs' damages evidence must be excluded under Rule 37(c)(1).  That rule provides:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.[80]

Additionally, Rule 37(c)(1)(C) provides that the court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  One such order is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."[81]  Defendants contend that Plaintiffs failed to provide a computation of each category of damages claimed as required by Rule 26(a) and (e) and that the failure was neither substantially justified nor harmless.  For those reasons, Defendants assert that all of Plaintiffs' damages evidence must be excluded.

Conversely, Plaintiffs respond that Defendants' argument is "untimely and improper," "incredulous and disheartening," "ill-advised and borderline unethical," and "speaks to [Defendants'] motive and credibility."[82]  Plaintiffs contend that Defendants "[c]onveniently and inappropriately . . . have withheld what amounts to a discovery objection at this stage of the

---

are genuine issues of fact, the resolution of which will not only affect jurisdiction but also the very merits of the case.") (citing *Land v. Dollar*, 330 U.S. 731 (1947)); *see also Flores v. Kelley*, 61 F.R.D. 442, 445 (N.D. Ind. 1973) (same).

[80] Fed. R. Civ. P. 37(c)(1).

[81] Fed. R. Civ. P. 37(b)(2)(A)(ii).

[82] ECF No. 46 at 33 (Plaintiffs' memorandum at 30).

proceedings in an attempt to improperly exclude evidence."[83]  Plaintiffs maintain that Defendants' argument is really a "quasi-motion for sanctions" that should be denied.[84]  To support those arguments, Plaintiffs rely on numerous non-binding cases for the proposition that, prior to the expiration of fact discovery, Defendants were required to first meet and confer with Plaintiffs concerning the "discovery objection" and then file a motion to compel or for sanctions, if necessary, before the end of fact discovery.  Specifically, Plaintiffs maintain that "[i]f Defendants knew that Plaintiffs' discovery responses were so deficient as to be incurable, Defendants were obligated to address the deficiencies during the discovery period."[85]

      Plaintiffs' arguments fail both legally and factually.  Their legal argument concerning the necessity of a motion to compel or for sanctions before seeking exclusion under Rule 37(c)(1) ignores both the rule's plain language and clear precedent from the United States Court of Appeals for the Tenth Circuit.  First, Rule 37(c)(1) states that a party is not allowed to use information that it failed to properly disclose under Rule 26 "on a motion, at a hearing, or at a trial."  Rule 37(c)(1) imposes no prerequisite motions before the bar on using previously undisclosed information kicks in; it simply says that failure to disclose precludes use "on a motion, at a hearing, or at a trial."  Second, based upon the relevant advisory committee notes, the Tenth Circuit has stated that Rule 37(c)(1) provides "'a self-executing sanction for failure to

---

[83] *Id*. at 31 (Plaintiffs' memorandum at 28).

[84] *Id*.

[85] *Id*. at 33 (Plaintiffs' memorandum at 30).

make a disclosure required by Rule 26(a).'"[86]  Out-of-circuit decisions notwithstanding, the
Tenth Circuit's approach is not only binding, but it is also the better-reasoned approach because,
as the advisory committee's note to the 1993 amendments to Rule 26 provide, initial disclosures
are "the functional equivalent of *court-ordered interrogatories*."[87]  That initial disclosures are
"court-ordered interrogatories" is significant because it circumvents the need for a motion to
compel.  A party's unrequited discovery request requires a motion to compel under Rule 37(a) to
bring the matter to the court's attention so that the court can issue a court order compelling the
production of an improperly withheld item.  With initial disclosures, however, the court has
already effectively ordered the production of certain basic information that must be shared.
Indeed, to require a motion to compel in this instance would amount to a motion for an order
requiring the party to comply with an existing court order.  That is a nonsensical, superfluous
step that wastes resources for both the parties and the judiciary.  Therefore, Rule 37(c)(1) does
not require a party to file a motion to compel Plaintiffs to do something that the court already
required them to do under Rule 26(a) and (e).

 Moreover, Plaintiffs' argument fails from a factual perspective because Defendants
actually notified Plaintiffs during the discovery period that Plaintiffs' disclosures concerning
damages were deficient.  Indeed, as noted above, on March 4, 2021, during discovery,

---

[86] *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1226 (10th Cir. 2015) (quoting Fed. R. Civ. P.
37 advisory committee's note to 1993 amendment, subdivision (c)); *see also In re C.W. Mining
Co.*, No. 2:10-CV-39 TS, 2013 WL 319287, at *5 (D. Utah Jan. 28, 2013) ("The sanctions
available under Rule 37(c)(1) are often described as self executing and automatic." (footnote,
quotations, and citation omitted)).

[87] Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment, subdivision (a), paragraph
(1) (emphasis added).

Defendants asked Plaintiffs to supplement their initial disclosures by providing a computation of damages.[88]  Plaintiffs responded by affirmatively stating that they had "no plans to supplement their initial disclosures at this time."[89]  Additionally, Defendants requested in discovery that Plaintiffs provide their proof of damages, which Plaintiffs did not provide.  Plaintiffs cannot rightly claim factual surprise where, as here, the "court-ordered-interrogatory" nature of initial disclosures and Defendants' actual notification were more than enough to notify Plaintiffs of the problems with their damage computation.

Given that Defendants' motion to exclude Plaintiffs' damages evidence under Rule 37(c)(1) is procedurally well-taken, the court addresses the merits of Defendants' Rule 37(c)(1) argument.  As shown below, Plaintiffs' damages evidence must be excluded under Rule 37(c)(1) because: (1) Plaintiffs failed to disclose a computation for each category of damages claimed as required by Fed. R. Civ. P. 26(a)(1)(A)(iii); and (2) Plaintiffs' failure to do so was neither substantially justified nor harmless.

### 1.     Plaintiffs Failed to Disclose a Computation of Damages.

Plaintiffs failed to disclose a computation of damages in either their initial disclosures or in their supplementation of those disclosures.  Under Rule 26(a)(1)(A)(iii), Plaintiffs were required to provide in their initial disclosures, "without awaiting a discovery request, . . . a computation of each category of damages claimed."  After Plaintiffs served their initial disclosures, Rule 26(e)(1)(A) required Plaintiffs to "supplement or correct" their initial

---

[88] ECF No. 40-4 at 2.

[89] *Id*. at 1.

disclosure concerning damages "in a timely manner" if they learned "that in some material respect the disclosure . . . [was] incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Plaintiffs do not dispute, nor could they, that they failed to provide a computation of damages with their initial disclosures.  Indeed, as previously noted, Plaintiffs stated in their initial disclosures that they were "unable to provide a specific computation of damages at this time because the parties have not yet conducted discovery on this matter."[90]  However, Plaintiffs contend that they supplemented their initial disclosures with a computation of damages in the February 24 Email, their responses to Defendants' discovery requests by identifying the difference between the listing price and sale price for the Property, and Mr. Kim's deposition testimony referencing the difference between the listing price and sale price for the Property.[91]  Plaintiffs further assert that their damages claims are supported by the various articles from internet sources concerning the Park City, Utah real estate market contained in the March 12 Production.[92]

Thus, the court must determine whether Plaintiffs' supplementation constituted a "computation" of each category of damages claimed under Rule 26(a)(1)(A)(iii).  The starting point for that determination is the plain language of Rule 26(a)(1)(A)(iii), which requires a

---

[90] ECF No. 40-3 at 6.

[91] ECF No. 46 at 27 (Plaintiffs' memorandum at 24).

[92] *Id.*

"computation."[93]  To determine the plain meaning of a word or term, the court can consult a

dictionary.[94]  According to the Oxford Dictionary, the term "computation" means: "The action or

process of computing, reckoning, or counting; arithmetical or mathematical calculation . . . . [A]

computed number or amount, a reckoning."[95]  The word "compute" means: "To determine by

arithmetical or mathematical reckoning; to calculate, reckon, count.  In later use chiefly: to

ascertain by a relatively complex calculation or procedure, typically using a computer or

calculating machine."[96]  Under those definitions, for each category of claimed damages, a

disclosing party is required to provide a computed number or amount (i.e., an actual

mathematical calculation).

　　　　Plaintiffs failed to provide any such computation for each category of claimed damages.

Plaintiffs' complaint asserts "severe" economic and emotional injury.  As to financial loss,

Plaintiffs' complaint refers to damages from a diminished sale of the Property and other expenses

Plaintiffs experienced having to come to Utah from California to deal with the post-Howard

---

[93] *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) (providing that courts "give the Federal Rules of Civil Procedure their plain meaning"); *United States v. Ceballos-Martinez, 371 F.3d 713, 716 (10th Cir. 2004)* (providing that courts "must interpret statutes and rules of procedure based on their plain language").

[94] *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We may consult a dictionary to determine the plain meaning of a term.").

[95] *Computation, oed.com*, https://www.oed.com/view/Entry/37968?redirectedFrom=computation#eid (last visited October 26, 2021).

[96] *Compute, oed.com*, https://www.oed.com/view/Entry/37974?rskey=X3HtxG&result=2&isAdvanced=false#eid (last visited October 26, 2021).

aftermath of the Property.  As to the diminished sale price, Plaintiffs' responses to Defendants'

discovery requests and Mr. Kim's deposition testimony—which generally reference the

difference between the listing price and sale price for the Property—are not a computation under

the plain meaning of that word.  Additionally, the March 12 Production does not contain any type

of computation.[97]  Finally, as to sales-diminishment damages, the February 24 Email also does

not contain an actual computation.  Although it lists two figures for claimed damages, it

concludes by stating that, "[u]ltimately, there are *at least* $170,000 in actual damages."[98]  Such

indefinite language does not meet the definition of a computation.  Moreover, at no time in

discovery or in disclosure form have Plaintiffs provided any calculation or information about

what they spent coming to Utah to deal with the aftermath of the Howards' tenancy.  And, as to

"emotional" damages, no amount of damages—much less a "computation"—is anywhere to be

found in the record.  Consequently, Plaintiffs fail to provide a "computation" of damages for any

category (i.e., emotional and economic) that they are seeking in this action.

Because Plaintiffs failed to provide the required computation for each category of

claimed damages, their damages evidence must be excluded under Rule 37(c)(1) unless their

failure to do so was substantially justified or is harmless.  As shown below, Plaintiffs' failure

does not fall under either exception.

---

[97] In their reply memorandum on their motion for summary judgment, Defendants raise an
evidentiary objection to Plaintiffs' reliance upon the March 12 Production.  ECF No. 48 at 8-9
(Defendants' memorandum at 4-5).  Defendants contend that the March 12 Production is
inadmissible hearsay.  The court need not resolve Defendants' objection here because even if the
court considers the March 12 Production, it does not alter the court's conclusion concerning the
exclusion of Plaintiffs' damages evidence under Rule 37(c)(1).

[98] ECF No. 46-2 at 6 (emphasis added).

2.      **Plaintiffs' Failure to Disclose a Computation of Damages Was neither Substantially Justified nor Harmless.**

Plaintiffs fail to show that their failure to provide a computation for each category of claimed damages was substantially justified or harmless.  For starters, Plaintiffs' failure to disclose a computation of damages in their initial disclosures was not substantially justified.  A party's litigation position is substantially justified "if it has a reasonable basis in both law and fact."[99]  Because Plaintiffs' position is not legally supported, it fails the test for substantial justification.  Rule 26(a)(1)(E) provides a list of "[u]nacceptable [e]xcuses" for failing to provide the required initial disclosures.  One unacceptable excuse is for a party to fail to make initial disclosures because a party "has not fully investigated the case."[100] This verboten excuse is precisely the one Plaintiffs rely upon here.  Indeed, as noted above, Plaintiffs' initial disclosures did not include the required computation of damages under Rule 26(a)(1)(A)(iii) but instead stated that there were several categories of damages that they "intend[ed] to explore during discovery."[101]  Additionally, Plaintiffs stated that they were "unable to provide a specific computation of damages at this time because the parties have not yet conducted discovery on this

---

[99] *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).  Where, as here, Rule 37 employs the same term of art as the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("EAJA"), the court borrows from EAJA jurisprudence to determine substantial justification.  *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) ("[P]arallel text and purposes counsel in favor of interpreting . . . provisions consistently."); *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (per curiam) (stating that when two provisions of different statutes share similar language, that is a "strong indication" they are to be interpreted consistently); *Morissette v. United States*, 342 U.S. 246, 263 (1952) (explaining that "where Congress borrows terms of art," it also borrows their meaning).

[100] Fed. R. Civ. P. 26(a)(1)(E).

[101] ECF No. 40-3 at 6.

matter."[102]  Plaintiffs' reliance upon an excuse that Rule 26(a)(1)(E) expressly forbids means that their position is not substantially justified.

Plaintiffs' failure to supplement their disclosures is also not substantially justified.  Rule 26(e)(1)(A) requires a party to supplement its initial disclosures when it learns that "in some material respect the disclosure . . . is incomplete . . . and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Although some information was provided during the course of discovery about potential damages (i.e., saying that damages were "at least" $170,000), Plaintiffs failed to provide the required computation even when discovery was completed as to what their actual computation of damages would be.  This failure was not substantially justified.

Plaintiffs' failure to disclose a computation of each category of claimed damages is also not harmless.  To determine whether a failure to disclose under Rule 26(a) or (e) is harmless, the court considers the following factors: "(1) the prejudice or surprise to the party against whom the [evidence] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [evidence] would disrupt the trial; and (4) the moving party's bad faith or willfulness."[103]  Under those factors, Plaintiffs' failure is not harmless.  First, Defendants have been prejudiced because they were bereft of any information about damages throughout fact discovery.  This placed Defendants at a tactical and substantive disadvantage during depositions

---

[102] *Id.*

[103] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999); *see also Poitra v. Sch. Dist. No. 1 in the Cnty. of Denver*, 311 F.R.D. 659, 669 (D. Colo. 2015) (applying *Woodworker's* factors to determine if a violation of Rule 37(c)(1) was harmless).

and for purposes of being able to subpoena documents to determine the validity of any claimed damages.  Second, Plaintiffs cannot now cure the prejudice because discovery has long passed.

Third, allowing Plaintiffs to introduce their evidence of damages at this point would disrupt trial (and these dispositive motions) because the failure to disclose what the damage computation would be has deprived Defendants of the ability to obtain meaningful discovery to test Plaintiffs' damage categories and theories.  Allowing damage evidence that has not been properly disclosed creates summary judgment and/or trial by surprise, which is the antithesis of discovery and, therefore, militates against a finding of harmlessness.

Finally, although there is no specific evidence of bad faith on Plaintiffs' part, there is evidence of willfulness.  Well into the discovery period, Defendants asked Plaintiffs to supplement their initial disclosures by providing a computation of damages.[104]  Plaintiffs responded by stating that they had "no plans to supplement their initial disclosures at this time."[105]  Additionally, Defendants requested information about damages during discovery, and Plaintiffs responded by objecting to the request and stating that they "cannot and will not produce documents in response to" Defendants' request.[106]  This is no accident, it is willful.  Therefore, Plaintiffs' failure to disclose a computation of each category of claimed damages is not harmless.  Because Plaintiffs' damages evidence is excluded under Rule 37(c)(1), Plaintiffs cannot establish the essential element of damages for each of their claims under Utah law, and,

---

[104] ECF No. 40-4 at 2.

[105] *Id*. at 1.

[106] ECF No. 40-5 at 6.

therefore, the court must grant Defendants' motion for summary judgment and deny PCR's motion for summary judgment.  However, as shown below, even if the court ignores Plaintiffs' Rule 37(c)(1) violation, their claims still fail as a matter of law.

**B.    Plaintiffs Fail to Carry Their Burden to Identify Sufficient Evidence to Establish the Essential Element of Damages for Each of Their Claims.**

Even if the court did not exclude Plaintiffs' damages evidence,[107] Plaintiffs' claims would still fail because they cannot carry their burden to identify evidence to meet that essential element for each of their four causes of action.  Because Defendants do not bear the burden of proof at trial on Plaintiffs' claims, Defendants may make their prima facie demonstration on summary judgment by pointing to a lack of evidence on an essential element of Plaintiffs' claims.[108]  Defendants have done so by identifying a dearth of evidence on the essential element of damages for Plaintiffs' claims.  Thus, the burden shifts to Plaintiffs to set forth specific facts to show damages.[109]

Plaintiffs fail to come forward with sufficient evidence to carry their burden of establishing the necessary element of damages for any of their claims.  Despite Plaintiffs' argument to the contrary—which lacks a single citation to any legal authority—under Utah law,

---

[107] Again, "damages" here is used in a generic sense and not specifically as a term of art for a contract claim.

[108] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp.*, 477 U.S. at 325); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

[109] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp.*, 477 U.S. at 324); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

damages are an element for proving breach of contract,[110] loss is an element of promissory estoppel,[111] injury is an element of intentional interference with economic relations,[112] and proving injury and damages are an element of fraudulent misrepresentation.[113]  Plaintiffs' failure to establish damages, loss, or injury is discussed for each cause of action below.

### 1.    Plaintiff's Fail to Show Any Damages for Breach of Contract.

Plaintiffs failed to produce any evidence during the pendency of this case to establish damages for breach of contract.[114]  To meet the damages element under Utah law, "[a] plaintiff is required to prove both the fact of damages and the amount of damages."[115]  To prove the fact of damages, "[t]he evidence must do more than merely give rise to speculation that damages in fact occurred; it must give rise to a reasonable probability that the plaintiff suffered damage as result

---

[110] *See, e.g., Stevens-Henager Coll. v. Eagle Gate Coll.*, 248 P.3d 1025, 1030 (Utah Ct. App. 2011) (granting summary judgment for failure to prove fact of damages in breach of contract claim).

[111] *See, e.g., J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1107 (Utah 2000) (requiring a showing of "loss" as an element for a promissory estoppel claim).

[112] *See, e.g., Keith v. Mountain Resorts Dev., L.L.C.*, 337 P.3d 213, 226 (Utah 2014) (requiring a showing of "injury" as an element for intentional interference with economic relations).

[113] *See, e.g., Larsen*, 97 P.3d at 716 (stating that proving "injury and damage" is the final element of fraudulent misrepresentation).

[114] Here, "damages" is used as a term of art.

[115] *Stevens-Henager Coll.*, 248 P.3d at 1030; *accord Atkin, Wright & Miles*, 709 P.2d at 336; *Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 305 P.3d 171, 176 (Utah Ct. App. 2013).

of a breach."[116]  "The level of persuasiveness required to establish the fact of loss is generally higher than that required to establish the amount of a loss."[117]

At best, Plaintiffs' musings in email communication about what damages may be is an estimate of damages; it does not establish the *fact* of damages here.  Indeed, given the evidence in this record, finding the fact of damages is not possible.  Although Mr. Crockett and Ms. Harris testified that they could not recall any instances when Mr. Howard rejected a showing request for the Property or telling Mr. Kim that Mr. Howard had rejected a showing request for the Property,[118] Plaintiffs supply text messages that appear to show Mr. Howard's denial to allow access at that time.[119]  Even assuming that Mr. Howard improperly precluded access to the Property, Plaintiffs fail to come forward with any evidence showing that any person would have purchased the Property at a price higher than the actual sale price while the Howards were living there.  In fact, Mr. Kim confirmed that there were no such offers when he admitted during his deposition that he could not identify anyone who would have bought the Property at a better price if that person had seen the Property on the occasions when he claims Mr. Howard denied access.[120]  Moreover, Mr. Kim's counsel stipulated to the fact that Mr. Kim could not make such

---

[116] *Atkin Wright & Miles*, 709 P.2d at 336.

[117] *Id*. (emphasis omitted).

[118] ECF No. 40-6 at 12 (Mr. Crockett deposition at 41:17-22); ECF No. 40-7 at 8-9, 11 (Ms. Harris deposition at 24:4-26:25, 35:10-23).

[119] ECF No. 50 at 13-15 (PCR's motion at 10-12).

[120] ECF No. 40-2 at 24 (Mr. Kim deposition at 86:5-13).

an identification.[121]  Mr. Kim's realtors could not provide that missing fact either.  In other words, no witness could testify that anyone would have offered to purchase the Property for more than the price at which it sold.  This dearth of evidence is fatal to Plaintiffs' claims.

Nevertheless, Plaintiffs rely upon the March 12 Production for help, but that does not assist them in establishing the fact of damages under Utah law.[122]  According to Plaintiffs, the articles contained in the March 12 Production show that "the Park City Real Estate market was experiencing record and historical buyer demand, low inventory, and competitive sale offers and closings above the list prices."[123]  Although that may be true, it does not necessarily follow that but for Mr. Howard's alleged denial of access to the Property, it would have sold at the asking price or at least above the price for which it later sold.

In essence, Plaintiffs' argument is that someone—Plaintiffs do not know who—may have requested to see the Property on the dates that Mr. Howard allegedly denied access—but no one can remember which potential buyer was denied access—and that absent that alleged denial of access, "it is quite possible and even likely [although Plaintiffs do not explain how] . . . that a prospective buyer would have paid more for the Property than what it sold for in October

---

[121] *Id*. at 25 (Mr. Kim deposition at 90:16-91:15).

[122] As previously stated, Defendants raise an evidentiary objection to Plaintiffs' reliance upon the March 12 Production.  ECF No. 48 at 8-9 (Defendants' memorandum at 4-5).  The court again need not resolve Defendants' objection here because even if the court considers the March 12 Production, it does not alter the court's conclusion that Plaintiffs fail to come forward with evidence to establish the fact of damages.

[123] ECF No. 46 at 26 (Plaintiffs' memorandum at 23).

2020."[124]  Such a theory of damages is "a conjecture based on speculation that is bottomed on surmise,"[125] and is insufficient to establish the *fact* of damages.  If Plaintiffs' theory of damages sufficed under Utah law, then any minor breach of contract would basically provide a blank check for Plaintiffs to fill in an amount that their imaginations found reasonable.  Because that is not the law in Utah, Plaintiffs fail to carry their burden to come forward with sufficient evidence to establish the fact of damages.

Even so, Plaintiffs argue that, despite failing to carry their burden to show damages, summary judgment is inappropriate for three reasons.  First, Plaintiffs argue that they are entitled to nominal damages if they can demonstrate a breach of the Lease.  Second, Plaintiffs contend that they may be entitled to punitive damages.  Finally, Plaintiffs assert that there is an issue of proximate cause that is inappropriate for summary judgment.  Each argument is rebutted below.

First, although true that Utah law appears to allow contract claims to proceed on a theory of nominal damages,[126] the court is not persuaded that such a damages theory is sufficient to allow a plaintiff to survive summary judgment.  Although a jury may determine at trial that a plaintiff is entitled to a nominal damages award, the court concludes that a plaintiff must do more to establish damages at the summary judgment stage.  If the rule were otherwise, plaintiffs could always assert nominal damages to survive an attack on their damages evidence on summary judgment.  However, Utah's appellate courts have repeatedly affirmed summary judgment when

---

[124] *Id*. at 20 (Plaintiffs' memorandum at 17).

[125] *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992).

[126] *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982).

"[a] plaintiff is required to prove both the fact of damages and the amount of damages"[127] but has been unable to do so.  Because the fact of damages is an element of a contract claim—the failure of which to prove is worthy of summary judgment—the mere assertion of nominal damages is not enough at this stage but is something that a jury can award if the case makes it to trial.  The court's conclusion is supported by Utah cases that have granted motions for summary judgment for failure to establish the fact of damages.[128]  Accordingly, Plaintiffs' nominal damages argument fails.

Second, with respect to Plaintiffs' claim for punitive damages, those damages are not recoverable here under Utah law for Plaintiffs' breach of contract claim.[129]  Moreover, punitive damages are not allowed under Utah law unless compensatory or general damages are

---

[127] *Stevens-Henager Coll.*, 248 P.3d at 1030; *accord Atkin, Wright & Miles*, 709 P.2d at 336; *Sunridge Dev. Corp.*, 305 P.3d at 176.

[128] *See, e.g.*, *Espenschied Transp. Corp. v. Fleetwood Servs, Inc.*, 422 P.3d 829, 836 (Utah 2018) (affirming summary judgment for failure to prove fact of damages); *Stevens-Henager Coll.*, 248 P.3d at 1033-34 (finding that "mere conclusions and conjecture" as to fact of damages warranted summary judgment).

[129] *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1167 (Utah 1983) ("It is settled as a general rule . . . that a plaintiff cannot recover punitive damages for a breach of contract."); *Jorgensen v. John Clay & Co.*, 660 P.2d 229, 232-33 (Utah 1983) ("The general rule is that punitive damages cannot be awarded for a breach of contract.").  The court recognizes that there is an exception to that general rule under Utah law.  Specifically, when "an independent tort is committed in the context of the performance or breach of a contract, punitive damages may be recovered together with compensatory damages for that tort." *Cook Assocs., Inc.*, 664 P.2d at 1167; *see also Jorgensen*, 660 P.2d at 232.  Plaintiffs contend that their fraudulent misrepresentation claim allows them to recover punitive damages under that exception.  That argument fails because, as shown below, Plaintiffs' fraudulent misrepresentation claim fails for want of injury and damage.  Therefore, Plaintiffs cannot recover punitive damages under that theory.

awarded.[130]  Because Plaintiffs fail to establish the fact of any compensatory or general damages, they are not entitled to punitive damages.

Finally, although true that proximate causation is a factual issue that is inappropriate for summary judgment, "if there is any doubt about whether something was a proximate cause of the plaintiff's injuries,"[131] the controlling issue here is not whether Defendants caused Plaintiffs' alleged injuries.  Instead, the issue is whether Plaintiffs have shown that they suffered any damages at all.  Even if the court were to assume proximate cause, Plaintiffs fail to establish the fact of damages.  Because Plaintiffs fail to carry their burden to show the fact of damages, the breach of contract claims fail as a matter of law.

### 2.     Plaintiffs Fail to Prove Any Loss for Promissory Estoppel.

Plaintiffs fail to provide any evidence of damages for their promissory estoppel claim. To establish a claim of promissory estoppel under Utah law, Plaintiffs must show, among other things, that they "relied on the [Defendants'] promise and the reliance resulted in a loss to [Plaintiffs]."[132]  Plaintiffs fail to provide any testimony or a single receipt indicating that they suffered any loss because of Defendants' broken promise, and, as amply shown above, they cannot legitimately assert a loss of sales proceeds for any breached promise.  Thus, they fail to carry their burden on summary judgment to establish loss as a matter of law.

---

[130] Utah Code Ann. § 78B-8-201(1)(a); *Jones v. Mackey Price Thompson & Ostler*, 469 P.3d 879, 892 (Utah 2020) (recognizing that punitive damages cannot exist without compensatory or general damages).

[131] *Goebel v. Salt Lake City S. R.R. Co.*, 104 P.3d 1185, 1190 (Utah 2004).

[132] *J.R. Simplot Co.*, 17 P.3d at 1107 (quotations and citations omitted).

**3.** **Plaintiffs' Intentional Interference with Economic Relations Claim Fails for Want of Injury, Among Other Things.**

As with the other claims heretofore addressed, Plaintiffs cannot establish an injury, among other things, for their intentional interference with economic relations claim. "In order to recover for intentional interference with economic relations, one of the elements the plaintiff must prove is that the defendant caus[ed] *injury* to the plaintiff."[133] An injury that is commonly alleged for this tort is the loss of customers,[134] which is exactly what Plaintiffs allege in their complaint.[135] But, as shown, Plaintiffs do not know which potential customer(s) was denied access to the Property during the Howards' tenancy. Even if the court assumes, as Plaintiffs allege, that Mr. Howard denied access to the Property on three occasions,[136] there is no evidence showing that the potential customers who wanted to see the Property at those times never got the opportunity to see it later. Indeed, neither Mr. Kim nor his realtors had any idea who visited the Property when. And, more importantly, neither Mr. Kim nor his realtors had any evidence showing that any of those potential customers were willing to pay more than the actual sale price for the Property. In other words, Plaintiffs cannot prove that it lost one customer, or suffered financial injury from that lost customer. Plaintiffs' failure to so prove requires dismissal of this claim as a matter of law.

---

[133] *Francis v Nat'l DME*, 350 P.3d 615, 628 (Utah Ct. App. 2015) (alteration in original) (emphasis added) (quotations and citation omitted).

[134] *See, e.g., AH Aero Servs., LLC v. Ogden City*, No. 05-CV-66, 2007 WL 2570207, at *10 (D. Utah Aug. 31, 2007) (stating that the plaintiffs alleged injury for defendant's purported intentional interference with economic relations was a loss of customers).

[135] ECF No. 2, ¶¶ 43, 50, 63.

[136] ECF No. 50 at 13-15 (PCR's motion at 10-12).

### 4. Plaintiffs Cannot Establish Injury and Damage as a Result of Fraudulent Misrepresentation.

As repeatedly shown above, Plaintiffs did not suffer damages, loss, or injury and, therefore, cannot establish "injury and damage" for purposes of fraudulent misrepresentation. Plaintiffs claim to have suffered a loss of buyers because Defendants fraudulently misrepresented a COVID-19 infection as a reason for not showing the Property. Ignoring the fact that Plaintiffs failed to provide any evidence that Mr. Howard's purported COVID-19 claim was indeed a misrepresentation, they fail to show that a single potential customer decided not to see the Property because of the COVID-19 misrepresentation. In other words, Plaintiffs did not provide a single witness statement or document showing that a potential buyer would have seen the Property but for the current occupants' claim of being infected with COVID-19. Moreover, even assuming that fact exists, there is no evidence showing that this potential buyer was willing to pay more than the price for which the Property actually sold because Plaintiffs have no idea who wanted to visit the Property or who actually did. Consequently, Plaintiffs' fraudulent misrepresentation claim likewise fails as a matter of law. Accordingly, the court grants Defendants' motion for summary judgment,[137] denies PCR's motion for summary judgment, and dismisses Plaintiffs' claims with prejudice.

---

[137] Defendants' motion for summary judgment raises two arguments in addition to those the court has addressed. First, Defendants contend that PCR's breach of contract claim fails as a matter of law because PCR did not have any interest in the Property and, therefore, was not damaged in any way by the alleged breach of the Lease. Second, Defendants assert that Plaintiffs' claim for intentional interference with economic relations also fails as a matter of law. Because the issues the court has addressed are dispositive of Defendants' motion, the court does not reach Defendants' additional arguments.

### III.     Sanctions Awards

The court turns next to the sanctions issues under the First Order and the Second Order. After carefully considering Plaintiffs and their counsel's response to the Second Order, the court has revisited the issue of the allowable sanctions to be awarded under the Second Order.  Based upon that reconsideration, the court will not award sanctions to Ms. Howard by reducing the sanctions awarded in the First Order to zero.  Instead, the court will order separate sanctions awards by determining the appropriate amount of sanctions to be awarded to Plaintiffs under the First Order and to Ms. Howard under the Second Order.  Based upon the following analysis, the court: (A) awards sanctions to Plaintiffs against Ms. Howard under the First Order in the amount of $3,387.90; and (B) awards sanctions to Ms. Howard against Plaintiffs and their counsel under the Second Order in an amount to be determined.

#### A.     The Court Awards Plaintiffs Sanctions Against Ms. Howard Under the First Order in the Amount of $3,387.90

In the First Order, the court indicated that the First Request for $11,636.40 was unreasonable and specifically stated that Plaintiffs would be awarded only certain expenses. Nevertheless, Plaintiffs submitted the Second Request, which sought $14,365.80.  The court will not award the full amount of the Second Request for three reasons: (1) as with the First Request, the amount sought by the Second Request is unreasonable; (2) the Second Request seeks expenses that were not permitted by the First Order; and (3) for those expenses that were allowed under the First Order, Plaintiffs' counsel's billed hours and billing rates are excessive.  After addressing each reason in turn below, the court (4) awards sanctions to Plaintiffs and against Ms. Howard in the amount of $3,387.90.

### 1.     The Amount Sought by the Second Request Is Unreasonable.

A sanctions award for $14,365.80 for attorney time for one missed video deposition, court reporter fees, and a 500-word motion is patently unreasonable under any standard.  When considering whether attorney fees are "reasonable," the court considers the twelve factors in *Johnson v. Georgia Highway Exp., Inc.*[138]  First, the time and labor required to research and draft a 500-word motion does not warrant the amount Plaintiffs request due to the brevity of the motion itself and, second, because a missed deposition is a neither novel nor difficult question. In fact, Rule 37(d) directly addresses the procedure and available sanctions for a missed deposition.  This is not cutting-edge legal work.  Third, the skill requisite to draft and file a 500-word motion for a missed deposition is minimal because, again, this is not complex legal work.  Fourth, because this exercise is minimal, Plaintiffs' counsel was not precluded from working on other matters.  Fifth, as addressed below, counsel's requested fee here is far in excess of rates in Utah.

Sixth, although the court is unsure whether the fee arrangement between Plaintiffs and their counsel is "fixed" or "contingent," the court notes that Mr. Kim is the managing partner for the law firm that is representing Mr. Kim and PCR.  This is hardly an "arms-length" attorney-fee

---

[138] 488 F.2d 714, 717-18 (5th Cir. 1974) (stating that the court should consider: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases); *see also Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (stating that the Tenth Circuit applies the 12 *Johnson* factors for statutory fee cases).

arrangement between Plaintiffs and their attorneys and weighs heavily against the fee request here because to award the fees Plaintiffs request is quite self-serving.  In fact, under Utah law—which governs the substantive claims here—"pro se litigants may not recover attorney fees, even if the pro se litigant is a licensed attorney."[139]  Thus, although Mr. Kim is only one of the Plaintiffs, he is the only one who actually claims a loss, which means that whatever fees he collects benefits him one way or another.  Indeed, Mr. Kim has the highest billing rate of all the assigned attorneys (i.e., $725.00 per hour) and seeks fees for his own work.  This militates in favor of unreasonableness.

Seventh, there were essentially no time limitations on the short-form motion for Ms. Howard's failure to appear.  In other words, Plaintiffs' counsel were not under any time pressure to bring the motion.

Eighth, although the complaint sought damages for "severe" financial and emotional harm, that is hardly the case for the reasons shown above.  Plaintiffs were unable to produce any proof of damages (in the generic sense).  That does not inure to Plaintiffs' benefit.  Moreover, the "results obtained" from Ms. Howard's deposition were minimal.  Ms. Howard provided very little useful evidence (other than failing to justify her failure to appear) that moved the merits of this case along.  In fact, Plaintiffs do not cite to Ms. Howard's deposition at all.  Therefore, allowing the fees that Plaintiffs seek here for a minimally useful deposition is unreasonable.

Ninth, although the attorneys assigned to this matter are well-qualified, the "undesirability" of this action (i.e., tenth factor) is low because the attorneys assigned to this

---

[139] *Griffin v. Cutler*, 339 P.3d 100, 106 (Utah Ct. App. 2014).

matter all answer to Mr. Kim, who is the managing partner.  Doing work for the managing

partner is not "undesirable" from a career building standpoint.  And, as stated above, Mr. Kim

certainly has an incentive to do work on his own case.  This arrangement is also relevant to the

eleventh factor because all the attorneys in this matter work for Mr. Kim, and Mr. Kim is

claiming fees for working on his own case.  This self-serving arrangement does not call for high

attorney fees for a deposition of arguable utility.

Finally, the federal district courts, when faced with a request for sanctions, rarely award

anything close to the amount Plaintiffs seek in the First Request much less the Second

Request.[140]  This is especially true where, as here, the deposition did not require counsel to

---

[140] *See, e.g.*, *Absolute Activist Value Master Fund Ltd. v. Devine*, 826 F. App'x 876, 879 (11th
Cir. 2020) (affirming district court's denial of request for $28,000.00 in fees and costs for several
missed depositions that included travel time and expenses where the district court found that the
amount requested "greatly exceeds any reasonable attorney's fees that would have been incurred
for the failure to appear"); *Marine Lumber Co. v. Precision Moving & Storage, Inc.*, No. 16-CV-
365, 2017 WL 3568668, at *3 (D. Haw. Aug. 16, 2017) (imposing sanction of $1,500.00 in
attorney's fees and costs "for the missed *depositions* and for the bringing of this motion"
(emphasis added)); *Betancourt v. Gen. Servs. of Va, Inc.*, No. 814CV01219T17MAP, 2015 WL
13792038, at *1-2 (M.D. Fla. June 22, 2015) (awarding $2,978.50 in attorney fees and $1,430.00
in costs under Rule 37(d)(3) for missed deposition); *RE/MAX, LLC v. M.L. Jones & Assocs., Ltd.*,
No. 5:12-CV-00768-D, 2014 WL 5460609, at *3 (E.D.N.C. Oct. 27, 2014) (denying Rule
37(d)(3) request for $4,907.50 for missed deposition and awarding $1,000.00 instead); *Carlson v.
Geneva City Sch. Dist.*, No. 08-cv-6202, 2012 WL 1664203, at 2 (W.D.N.Y. May 11, 2012)
(refusing to impose $4,064.00 in attorney fees for missed deposition and drafting of motion and
reply and, instead, imposing $3,290.00); *Evans v. Taylorsville City*, No. 2:06-CV-631-TS-PMW,
2009 WL 10728297, at *2 (D. Utah Apr. 17, 2009) (declining to award under Rule 37(d)(3)
request for $1,814.00 for missed deposition because it was "excessive and unreasonable" but
awarding $131.00 for cost of court reporter); *Bedwell v. Fish & Richardson P.C.*, No. 07-CV-
0065-WQH (JMA), 2009 WL 10671331, at *3-5 (S.D. Cal. Mar. 30, 2009) (awarding $5,173.62
in fees and costs under Rule 37(d)(3) for missed deposition), *objections overruled*, No. 07CV65
WQH (JMA), 2009 WL 10671333 (S.D. Cal. June 22, 2009); *Mazile v. Chardee's Rest., LLC*,
No. 07-61005-CIV, 2008 WL 11470766, at *2 & n.2 (S.D. Fla. Jan. 29, 2008) (awarding $450.00
for 1.8 hours of attorney time at $250.00 per hour and $130.00 for cost of court reporter under

travel, and counsel was well aware that Ms. Howard would not attend.  Accordingly, the court

concludes that the Second Request is patently unreasonable.

### 2. The Second Request Seeks Expenses That Were Not Permitted by the First Order.

The Second Request seeks expenses that were disallowed under the First Order.

Specifically, the Second Request seeks $3,545.50 for 12.6 hours of attorney time in the days

leading up to Ms. Howard's March 2, 2021 deposition.[141]  This is contrary to the First Order, in

which the court stated that Plaintiffs' counsel's preparation expenses prior to the deposition

would not be allowed.[142]  Additionally, the Second Request seeks $3,450.63 for 17 hours of

---

Rule 37(d)(3) for missed deposition); *Microsoft Corp. v. Moss*, No. CIVA 106-CV-1670-JOF, 2007 WL 2782503, at \*9 (N.D. Ga. Sept. 20, 2007) (awarding $366.55 for missed deposition under Rule 37(d)(3) because counsel traveled to the deposition site, waited there, and returned); *Meshell v. Noble Drilling Servs., Inc.*, No. 05-CV-1690, 2006 WL 8446158, at \*2 (S.D. Tex. July 24, 2006) (imposing $1,500.00 "as reasonable expenses and attorney's fees incurred" for "missed deposition and preparation of this motion"); *Alredi Prods., Inc. v. Sandra Carter Prods., Inc.*, No. 03CIV0790(CSH)(THK), 2006 WL 617968, at \*2 & n.2 (S.D.N.Y. Mar. 10, 2006) (awarding $500.00 for missed deposition under Rule 37(d)(3) where counsel sought $1,700.00 for 8.5 hours of work involved with motion for sanctions); *but see Pacquiao v. Mayweather*, No 09-CV-2448, 2012 WL 4092684, at \*1-2 (D. Nev. Sept. 17, 2012) (allowing professional boxer Emmanuel Pacquiao to recover $113,518.50 in attorney fees and $774.10 in costs after professional boxer Floyd Mayweather, Jr. failed to appear for his deposition after being ordered to do so and stating that award was appropriate because Mr. Mayweather ignored a court order and that the circumstances of the litigation "between very preeminent stars within the boxing industry" justified the award).

[141] ECF No. 51-1 at 2.

[142] For some of these expenses, Plaintiffs claim that they are authorized because they used that research later in the 500-word motion and, therefore, reduced some of these expenses to 25%. However, the fact remains that at the time these expenses were incurred, Ms. Howard had not failed to attend her deposition.  Therefore, even at 25%, these pre-failure-to-appear expenses were not "caused by" Ms. Howard's failure to appear.  Fed. R. Civ. P. 37(d)(3).  The court will give some credit to research done in the first, non-compliant motion for sanctions that Plaintiffs

attorney time and $584.77 in legal research fees beginning after Ms. Howard failed to appear for her deposition and leading up to May 11, 2021, the filing date of Plaintiffs' first, non-compliant motion for sanctions.[143]  This is also contrary to the First Order, wherein the court stated that only expenses for Plaintiffs' compliant, 500-word motion would be allowed.  The court acknowledges that some of the foregoing expenses likely contributed to the 500-word motion that Plaintiffs eventually filed.  To the extent that is true, it is accounted for in the next section.

### 3.    Plaintiffs' Counsel's Billed Hours and Billing Rates Are Excessive.

Plaintiffs' counsel's billed hours exceed what is reasonable.  Additionally, Plaintiffs' counsel's billing rates are excessive for this district.  Accordingly, as shown below, the court reduces both the number of allowed billing hours and the attorneys' billing rates in calculating the sanctions award.

First, Plaintiffs' counsel's billed hours are excessive.  In total, the Second Request includes 45.2 hours of attorney time for a total of $13,086.63.  Plaintiffs contend that the requested hours and corresponding attorney fees are reasonable because of the "rarity and uncommon nature"[144] of a missed deposition and the "novel legal issues"[145] involved with their motion for sanctions.  The court is unpersuaded.  While it may be unusual in Plaintiffs' counsel's experience to have a party miss a deposition, that does not mean that such a situation is entirely

---

submitted because those expenses were at least "caused by" Ms. Howard's failure to appear but the court will not give full credit because of Plaintiffs' failure to follow the court's rules.

[143] ECF No. 51-1 at 2-4.

[144] ECF No. 60 at 9.

[145] ECF No. 51-2, ¶ 15.

uncommon or presents "complex" legal issues as counsel's billing records purport.[146]  To the

contrary, Rule 37(d) specifically addresses this common issue, and, in any event, the issues

presented in Plaintiffs' motion for sanctions were straightforwardly consistent with Rule 37.

Furthermore, as demonstrated above by the court's cursory research, there are numerous cases

involving the issues presented by a missed deposition.[147]  Additionally, the motion that Plaintiffs

filed was 500 words.  Although those words may be carefully selected, there are still only 500 of

them.  Five hundred words cannot possibly be that expensive.  Therefore, the court will reduce

the number of requested hours to a more reasonable number as follows.  The court will include in

---

[146] ECF No. 51-1 at 2.

[147] *See, e.g.*, *Absolute Activist Value Master Fund Ltd.*, 826 F. App'x at 879 (affirming district court's denial of request for $28,000.00 in fees and costs for several missed depositions that included travel time and expenses where the district court found that the amount requested "greatly exceeds any reasonable attorney's fees that would have been incurred for the failure to appear"); *Marine Lumber Co.*, 2017 WL 3568668, at *3 (imposing sanction of $1,500.00 in attorney's fees and costs "for the missed *depositions* and for the bringing of this motion" (emphasis added)); *Betancourt*, 2015 WL 13792038, at *1-2 (awarding $2,978.50 in attorney fees and $1,430.00 in costs under Rule 37(d)(3) for missed deposition); *RE/MAX, LLC*, 2014 WL 5460609, at *3 (denying Rule 37(d)(3) request for $4,907.50 for missed deposition and awarding $1,000.00 instead); *Carlson*, 2012 WL 1664203, at 2 (refusing to impose $4,064.00 in attorney fees for missed deposition and drafting of motion and reply and, instead, imposing $3,290.00); *Evans*, 2009 WL 10728297, at *2 (declining to award under Rule 37(d)(3) request for $1,814.00 for missed deposition because it was "excessive and unreasonable" but awarding $131.00 for cost of court reporter); *Bedwell*, 2009 WL 10671331, at *3-5 (awarding $5,173.62 in fees and costs under Rule 37(d)(3) for missed deposition); *Mazile*, 2008 WL 11470766, at *2 & n.2 (awarding $450.00 for 1.8 hours of attorney time at $250.00 per hour and $130.00 for cost of court reporter under Rule 37(d)(3) for missed deposition); *Microsoft Corp.*, 2007 WL 2782503, at *9 (awarding $366.55 for missed deposition under Rule 37(d)(3) because counsel traveled to the deposition site, waited there, and returned); *Meshell*, 2006 WL 8446158, at *2 (imposing $1,500.00 "as reasonable expenses and attorney's fees incurred" for "missed deposition and preparation of this motion") *Alredi Prods., Inc.*, 2006 WL 617968, at *2 & n.2 (awarding $500.00 for missed deposition under Rule 37(d)(3) where counsel sought $1,700.00 for 8.5 hours of work involved with motion for sanctions).

the sanctions award the 0.3 hours of attorney time for Zayde Khalil ("Mr. Khalil") for attending Ms. Howard's missed deposition and the 2.7 hours of attorney time for Benjamin White ("Mr. White") to prepare for oral argument and argue the 500-word motion for sanctions.[148]  In addition to that time, the court will include 4 hours for the time for Mr. Khalil to prepare the 500-word motion for sanctions and 1 hour for Mr. White to review that motion prior to filing.

Second, Plaintiffs' counsel's billing rates are excessive for a case pending in this court. The Tenth Circuit has held that market rates in the district where a case is pending should be applied when awarding attorney fees.[149]  Because Plaintiffs' counsel practice in San Diego, California, the court will not use the hourly rates Plaintiffs' counsel relies upon.  Instead, the court is persuaded that the rates noted in Ms. Howard's objection to the Second Request reflect the market billing rates for attorneys in this district.[150]  Thus, the court will apply a billing rate of $280.00 per hour for Mr. Khalil and $335.00 per hour for Mr. White.

### 4.    The Court Awards Plaintiffs Sanctions Against Ms. Howard in the Amount of $3,387.90.

Based upon the foregoing, the court awards sanctions to Plaintiffs under the First Order in the amount of $3,387.90, which is comprised of the following amounts: (1) $84.00 for 0.3 hours at the rate of $280.00 per hour for Mr. Khalil's attendance at Ms. Howard's missed

---

[148] ECF No. 51-1 at 2, 5.

[149] *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) ("Hourly rates must reflect the prevailing market rates in the relevant community.  Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state lawyer possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." (quotations and citations omitted)).

[150] ECF No. 55 at 3-4.

deposition; (2) $694.40 for court reporter fees for Ms. Howard's missed deposition;

(3) $1,120.00 for 4 hours at the rate of $280.00 per hour for Mr. Khalil to prepare the 500-word

motion for sanctions; (4) $335.00 for 1 hour at the rate of $335.00 per hour for Mr. White to

review the motion prior to filing; (5) $904.50 for 2.7 hours at the rate of $335.00 per hour for Mr.

White to prepare for oral argument and argue the motion; and (5) $250.00 for legal research

service fees.  Ms. Howard shall pay that award to Plaintiffs within 14 days of the date of this

Memorandum Decision and Order.

### B.   Ms. Howard Is Awarded Sanctions Against Plaintiffs and Their Counsel in an Amount to Be Determined.

In the Second Order, the court stated its intention to impose sanctions against Plaintiffs

under the court's inherent authority and/or against Plaintiffs' counsel under § 1927.[151]  Plaintiffs

and their counsel responded stating that sanctions were inappropriate because their conduct was

appropriate and, in any event, sanctions under either the court's inherent authority or § 1927 are

limited to compensating the opposing party for the attorney fees and expenses incurred because

of the sanctionable conduct.[152]  As explained below, the court sanctions Plaintiffs and their

counsel for: (1) submitting a bad faith attorney fee demand and multiplying the proceedings

relating to that exorbitant fee request for a single missed video deposition but (2) limits that

sanction to what Defendants' counsel incurred as a result of that sanctionable conduct.  Each

issue is discussed in order below.

---

[151] ECF No. 59.

[152] ECF No. 60.

### 1.     A Sanction is Warranted for Multiplying the Proceedings.

The manner in which Plaintiffs and their counsel have sought to obtain fees for one missed video deposition amounts to bad-faith conduct that abuses the judicial process and unnecessarily multiplies the proceedings. As stated in the Second Order, a court may rely upon its inherent authority to sanction a party's conduct *sua sponte* when the party acts in bad faith or in willful violation of a court order.[153]  Additionally, the court may rely upon § 1927 to sanction counsel who "multipl[y] the proceedings in any case unreasonably and vexatiously."[154]  When deciding whether to impose sanctions, context is important.

This case arises out of a two-month rental agreement. Mr. Howard and Ms. Howard allegedly did not cooperate with Mr. Kim to allow the Property to be shown to prospective buyers after Mr. Kim allegedly failed to cooperate with them about when to end this two-month lease. Both Plaintiffs and Defendants left this transaction feeling anger towards one another. Although some would simply use this bad experience as a reason never to enter into a short-term rental in the future, Mr. Kim—who is the managing partner of a law firm—decided to make a federal case of the matter by alleging that Defendants' purported failure to cooperate with him resulted in would-be buyers not being able to see the Property, which caused Plaintiffs "severe

---

[153] *Lundahl v. Halabi*, 600 F. App'x 596, 607 (10th Cir. 2014); *see also Entrata, Inc. v. Yardi Sys., Inc.*, No. 2:15-cv-00102, 2019 WL 937346, at *13 (D. Utah Feb. 26, 2019) (imposing sanctions on a party that "repeatedly acted in bad faith" in delaying the proceedings); *Sevier v. Hickenlooper*, No. 17-cv-1750-WJM-NYW, 2018 WL 472454, at *4 (D. Colo. Jan. 18, 2018) (imposing sanctions after "flagrant, intentional, and repeated violations of the Court's Orders").

[154] 28 U.S.C. § 1927; *see also Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008); *Braley v. Campbell*, 832 F.2d 1504, 1511-13 (10th Cir. 1987).

financial damages,"[155] "severe financial harm,"[156] and "severe emotional and financial harm."[157] To remedy these purported wrongs, Plaintiffs requested compensatory, incidental, and punitive damages.[158]  In response, Defendants filed counterclaims for breach of contract and trespass,[159] which Mr. Kim moved to dismiss[160] and strike because they cast him in a bad light.[161]  Needless to say, the animosity that led to this lawsuit appeared to gain intensity in litigation.

And then came discovery.  Plaintiffs refused to provide initial disclosures of damages, refused to supplement them, refused to produce responsive documents to a duly served discovery requests, and—on the last day of discovery—finally produced documents (albeit of limited relevance).  Although Ms. Howard's deposition had been duly noticed, she never requested time off from her school so that she could attend without upsetting her employer.[162]  It turns out that she simply did not want to attend, and, therefore, did not appear.  To make matters worse, she filed a short-form motion for protective order a mere two hours before her deposition was to be taken,[163] which the court was unable to decide but to which Plaintiffs understandably felt

---

[155] ECF No. 2, ¶ 44.

[156] *Id.*, ¶ 51.

[157] *Id.*, ¶¶ 57, 64.

[158] *Id.* at 22.

[159] ECF No. 14.

[160] ECF No. 21.

[161] ECF No. 20.

[162] ECF No. 47 at 6-7.

[163] ECF No. 33.

compelled to file a short-form response.[164]  Although the parties resolved Ms. Howard's

untimely motion for a protective order without court intervention,[165] and Defendants later

deposed her, Plaintiffs stated that they would seek fees and costs for Ms. Howard's missed

deposition.[166]

They did so, however, by incorrectly filing a lengthy motion instead of following the

court's short-form procedure.[167]  After the court struck the lengthy motion,[168] Plaintiffs filed a

compliant short-form motion seeking fees for Ms. Howard's missed deposition to which Ms.

Howard responded.[169]  The email correspondence between the parties showed that Plaintiffs

were seeking at least $11,636.40 for the missed video deposition in addition to fees for

preparing, filing, and arguing the sanctions motion that would be determined later.[170]

Upon reviewing the short-form sanctions motion, the court thought that Plaintiffs'

preliminary request for $11,636.40 in fees and expenses for a single, video deposition was

excessive especially where, as here, Plaintiffs' counsel: (1) did not travel to Chicago; (2) were

aware beforehand that Ms. Howard would not appear; and (3) were able to make all their

pre-deposition preparation time worthwhile when they deposed Ms. Howard shortly after her

---

[164] ECF No. 34.

[165] ECF No. 37.

[166] ECF No. 38.

[167] *Id.*

[168] ECF No. 39.

[169] ECF Nos. 41, 43.

[170] ECF No. 41-2 at 14 (Exhibit 2 at 1).

improper failure to appear.  When the court pressed Plaintiffs' counsel at oral argument on the sanctions motion for why counsel's fees were so high, Plaintiffs' counsel responded:

> Your Honor, so we went back and forth on whether to ask for all of the costs and fees that we incurred for preparing for that deposition and we ultimately decided to include all of them, including the work that we did on the opposition to that emergency motion.
>
> So preparing for a deposition requires a lot of review, a lot of conferencing with attorneys, a lot of conferencing with clients.  We reviewed our invoices, our bills, and everything in that number was, in our estimation, reasonable for the preparation for the deposition.[171]

From this, the court derived two principal bases for the facially excessive $11,636.40 request: (1) preparing a response to Defendants' motion for protective order, which Defendants untimely filed two hours before the missed deposition and was later mooted by the parties' agreement; and (2) deposition preparation.

In the First Order, the court excluded both principal bases for Plaintiffs' $11,636.40 claim[172] because Ms. Howard's failure to appear did not cause those expenses.[173]  Instead, the court allowed Plaintiffs to recover their fees and expenses from Ms. Howard—not her attorney— that were limited to court reporter fees, "preparing and filing the 500-word [short-form] motion" and for one attorney's time arguing the motion "during oral argument."[174]  The court asked the

---

[171] June 4, 2021 Hearing at 24:8-17.

[172] ECF No. 47 at 8-10.

[173] Fed. R. Civ. P. 37(d)(3).

[174] ECF No. 47 at 9.

parties to meet and confer about what a reasonable fee would be for the categories of expenses that the court allowed in its sanctions order.[175]

While the parties were discussing how much Ms. Howard would have to pay Plaintiffs for her missed deposition, the court began reviewing Defendants' motion for summary judgment, Plaintiffs' response thereto, and Defendants' reply.[176]  The court also began reviewing PCR's motion for summary judgment.[177]  The court then received Plaintiffs' request for attorney fees for the missed deposition, but now, instead of being a "steep" $11,636.40, it was a baffling $14,365.80.[178]

What all of these documents seemed to show was a disturbing trend: Plaintiffs' lawsuit was not meant to recover damages but to cause them.  By illustration, a portion of Plaintiffs' $14,365.80 claim stems from approximately 17 hours of what Plaintiffs' counsel call "complex" legal research about what to do when a party fails to appear at a deposition,[179] despite the fact that Rule 37(d) was promulgated to right that very wrong.  Yet, counsel's proclivity for thorough research relating to the nuances of a relatively straight-forward discovery topic is starkly juxtaposed against their research of the law and the facts relating to the substantive causes of action in this lawsuit.  Because Fed. R. Civ. P. 11 "creates and imposes on a party or counsel an

---

[175] ECF No. 47 at 9-11.

[176] ECF Nos. 40, 46, 48.

[177] ECF No. 50.

[178] ECF No. 51 at 3.

[179] ECF No. 51-1 at 2.

affirmative duty to investigate the law and facts before filing,"[180] the court presumes that Plaintiffs' counsel—including Mr. Kim himself—made the appropriate pre-litigation investigation of the facts and the law before filing this lawsuit.  And because Fed. R. Civ. P. 26(g)(1) imposes a duty of "reasonable inquiry" on counsel before disclosing a witness in a party's initial disclosure, the court presumes that Plaintiffs' counsel had communicated with Mr. Kim and Plaintiffs' realtors given that Plaintiffs identified them as individuals that were "likely to have discoverable information" that Plaintiffs "may use *to support* [their] claims."[181]

But neither Mr. Kim nor his realtors provided any evidence that was at all helpful in establishing a crucial element that transects all four causes of action that Plaintiffs allege: proving some form of injury.  For starters, where, as here, a plaintiff has suffered the "severe" financial and emotional harm alleged in a complaint, one would expect the plaintiff to have enough information to disclose *something* about damages in its initial disclosures and discovery. Otherwise, the allegations in the complaint are based on nothing, which Rule 11 forbids.  And when opposing counsel seeks more information in discovery about what those "severe" damages might be, one would not expect the severely injured Plaintiffs to respond that they "cannot and will not produce documents in response to" Defendants' request.[182]  A severely injured plaintiff would not hide the ball on damages for fear of risking exclusionary sanctions under Rule 37(b) and (c)(1).  Instead, a party that fulfilled its pre-litigation obligations under Rule 11 possesses

---

[180] *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 977 (E.D. Cal. 2005).

[181] Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).

[182] ECF No. 40-5 at 6.

*some* evidence of its severe injuries and fulfills its obligations under Rule 26 by disclosing that computation and discovery related thereto.  Moreover, a truly aggrieved party does not wait until the last day of discovery—as Plaintiffs did here—to produce its evidence of damages.  This strategy smacks of discovery gamesmanship and does not reflect the sincere efforts of a party genuinely trying to obtain redress for a defendant's actions.[183]

Yet, Mr. Kim was unable to identify anyone who would have bought the Property at a better price than what he sold it for if that person had seen the Property on the occasions when Mr. Howard allegedly denied access to the Property.[184]  Mr. Kim's counsel also stipulated to the fact that Mr. Kim could not make such an identification.[185]  Neither of Plaintiffs' realtors provided any such information.  To the contrary, they conceded that they did not maintain that information and could not recall Mr. Howard ever declining a requested showing of the Property.[186]  Worse yet, Mr. Kim—despite being the one who suffered the "severe" financial and emotional damages alleged in the complaint—failed to produce any evidence of damages, loss,

---

[183] Given Plaintiffs' responses offered to address other discovery wrongs that they have committed in this case, the court assumes that Plaintiffs will say that their handling of discovery should not be held against them here because Defendants never filed a motion to compel. However, such argument would miss the point.  The court's point here is not that a motion to compel should be granted; it is the point that parties who are truly seeking legal redress for a defendant's wrongs provide information of their damages.  They do not hide evidence of damages because the exclusionary stakes for such conduct are simply too high for a truly aggrieved party to risk.

[184] ECF No. 40-2 at 24 (Mr. Kim deposition at 86:5-13).

[185] *Id*. at 25 (Mr. Kim deposition at 90:16-91:15).

[186] ECF No. 40-6 at 12 (Mr. Crockett deposition at 41:17-22), 23 (Mr. Crockett deposition at 83:6-22); ECF No. 40-7 at 8-9, 11 (Ms. Harris deposition at 24:4-26:25, 35:10-23).

or injury either in discovery or as an exhibit to Plaintiffs' opposition to Defendants' motion for summary judgment.  This omission is startling given that Defendants' motion for summary judgment seeks to dismiss Plaintiffs' causes of action precisely for their failure to provide proof of damages.  And in addition to providing no factual evidence to establish damages, Plaintiffs' legal arguments that Utah law does not require such evidence lack meaningful citations to authority because Utah law clearly requires proof of damage, loss, or injury.  The manner in which Plaintiffs have behaved during this litigation is not how a party who is genuinely seeking to recover its "severe" damages behaves.

Nevertheless, despite its Rule 11 and Rule 26(g) misgivings, the court will give Plaintiffs the benefit of the doubt that there was adequate investigation of the law and facts to initiate this lawsuit and sufficient "reasonable inquiry" to disclose its witnesses in the lawsuit's infancy.  But the lack of damage evidence disclosed in the required initial disclosures and discovery, the dearth of damages evidence accompanying Plaintiffs' summary judgment response and cross-motion, and Plaintiffs' citationless arguments about Utah's law, color how this court views the good-faith basis for Plaintiffs' modified request for $14,365.80 for a single missed deposition.  Indeed, color the court jaundiced.

The court is jaundiced towards Plaintiffs' $14,365.80 request for fees not only because of the litigation history in this case—which the court can consider when imposing sanctions[187]—but also because of Plaintiffs' argument for why their claim of $14,365.80 is an appropriate remedy

---

[187] *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (stating that "a district court may take into account [its] overall sense of a suit" when determining sanctions under its inherent authority (alteration in original) (quotations and citation omitted)).

for Ms. Howard's missed video deposition.  Plaintiffs contend that the court should not have threatened sanctions based on their new $14,365.80 claim for fees because those fees were for services that are separate from those sought in Plaintiffs' initial request for $11,636.40. Therefore, Plaintiffs argue, the court could not properly use Plaintiffs' initial fee request as a reasonableness benchmark for it new request.[188]

In attempting to follow Plaintiffs' argument to a logical conclusion, the court readily acknowledges that court reporter costs were included in both requests for fees, and Plaintiffs are not seeking to recover those twice.  But, other than negligible court reporter fees, the court will agree for the sake of argument only that the services rendered in both fee requests were separate from one another, and that their $14,365.80 claim did not include items that court excluded from consideration in the First Order.[189]  The court briefly recaps the services covered in each fee request and then shows why this argument establishes that sanctions are appropriate.

As Plaintiffs' counsel explained, the bulk of their $11,636.40 claim for fees and expenses from the missed deposition consisted of: (1) deposition preparation and (2) filing a response to Defendants' untimely motion for protective order.[190]  Because Defendants' untimely motion was filed 2 hours before Ms. Howard's deposition was to begin, Plaintiffs quickly filed a response that was limited to 500 words under the court's short-form discovery rules.[191]  Thus, even

---

[188] ECF No. 60 at 4-6.

[189] ECF No. 47.

[190] ECF No. 60 at 5.

[191] Ms. Howard filed the untimely motion for protective order at 6:59 a.m. Mountain Time, ECF No. 33, and Plaintiffs responded by 10:46 a.m. Mountain Time.  ECF No. 34.

assuming that Plaintiffs began working 1 minute after Defendants' untimely motion was filed (i.e., 7:00 a.m. Mountain Time) and worked uninterruptedly until Plaintiffs' response was filed (i.e., 10:46 a.m. Mountain Time) the amount of attorney time for that 500-word filing was 3.75 hours.  Even if the court applies Mr. Kim's hourly rate of $725.00 to that entire time—which is unlikely given that another attorney with a lower billing rate filed the response—the attorney fees for filing the 500-word response are $2,718.75.[192]  And even if the court generously assumes internet research costs and other miscellaneous expenses of $200.00 for the 500-word response written over a 3.75-hour span, the costs and fees for that document are now $2,918.75.

Juxtapose Plaintiffs' fees and costs for their 500-word response against the fees and costs they claim for drafting their 500-word motion for sanctions.  Plaintiffs' counsel informed Defendants' counsel that in addition to the $11,636.40 addressed above, Plaintiffs would seek costs and fees "associated with preparation, filing, and determination of the [sanctions] motion itself."[193]  Thus, the $14,365.80 chiefly reflects the fees and expenses for preparing, filing, and briefly arguing the 500-word, short-form sanctions motion itself.[194]  In other words, Plaintiffs' first 500-word filing cost approximately $3,000.00, but its second 500-word filing exceeds approximately 4 times more.  Although the court acknowledges that Plaintiffs should not be penalized for not rushing the filing of the second 500-word motion like it had to do for its first 500-word filing, the court does not need to meticulously compare billing records for both

---

[192] By applying the rate of $725.00 per hour, the court leaves room for the fact that two attorneys with a lower billing rate may have worked on this motion at the same time.

[193] ECF No. 41-2 at 14 (Exhibit 2 at 1).

[194] ECF No. 60 at 5-6.

requests for fees to determine that one 500-word filing cannot cost approximately 400% more than another 500-word motion especially where, as here, sanctions for a missed deposition is not a "complex" legal topic.[195]  This observation rings true where Plaintiffs have failed to provide—and this court cannot find—a single case in the United States that would award anywhere near $14,365.80 for *total expenses* for a single missed deposition much less for drafting and arguing a *500-word motion* seeking fees for a solitary missed deposition.  Plaintiffs' argument for why its second fee request is not sanctionable is untenable.

But even if the court steps back and looks at the entire fee forest instead of the cost of two 500-word trees, Plaintiffs' argument in support of the legitimacy of its fee requests further demonstrates its excess.  Over the course of this missed-deposition saga, Plaintiffs' counsel demanded $11,636.40 in fees from Defendants' counsel in addition to fees for the "preparation, filing, and determination of the [sanctions] motion itself,"[196] which we now know to be $14,365.80.  In other words, Plaintiffs demanded from Defendants a total amount approaching $25,000.00 as a sanction for one missed *video* deposition and drafting two related 500-word court filings.  Given the court's analysis above showing how unreasonable $14,365.80 is for one missed deposition that was of marginal value in this litigation, a request approaching $25,000.00 is beyond the pale.

The court then considers that Defendants offered to settle Plaintiffs' second fee request for $3,426.90, which, ironically, is more than what this court found to be a reasonable sanction.

---

[195] Fed. R. Civ. P. 37(d).

[196] ECF No. 41-2 at 14 (Exhibit 2 at 1).

Moreover, this settlement offer is on the higher end of the sanctions spectrum for a single missed deposition.[197] Thus, Plaintiffs' argument against the imposition of sanctions fails to show that their fee request is anything other than grossly unreasonable.

When the court considers the unreasonable nature of Plaintiffs' fee request in context with the rest of Plaintiffs' behavior during litigation, Plaintiffs' argument against sanctions completely falls apart because Plaintiffs cannot escape the fact that they are not behaving like a party seeking to obtain a remedy for severe damages; they are seeking to use the judicial system to damage Defendants. If Plaintiffs really wanted to recover damages, then they would have devoted the same diligence to researching the law and the facts of their substantive claims that

---

[197] *See, e.g.*, *Absolute Activist Value Master Fund Ltd.*, 826 F. App'x at 879 (affirming district court's denial of request for $28,000.00 in fees and costs for several missed depositions that included travel time and expenses where the district court found that the amount requested "greatly exceeds any reasonable attorney's fees that would have been incurred for the failure to appear"); *Marine Lumber Co.*, 2017 WL 3568668, at *3 (imposing sanction of $1,500.00 in attorney's fees and costs "for the missed *depositions* and for the bringing of this motion" (emphasis added)); *Betancourt*, 2015 WL 13792038, at *1-2 (awarding $2,978.50 in attorney fees and $1,430.00 in costs under Rule 37(d)(3) for missed deposition); *RE/MAX, LLC*, 2014 WL 5460609, at *3 (denying Rule 37(d)(3) request for $4,907.50 for missed deposition and awarding $1,000.00 instead); *Carlson*, 2012 WL 1664203, at 2 (refusing to impose $4,064.00 in attorney fees for missed deposition and drafting of motion and reply and, instead, imposing $3,290.00); *Evans*, 2009 WL 10728297, at *2 (declining to award under Rule 37(d)(3) request for $1,814.00 for missed deposition because it was "excessive and unreasonable" but awarding $131.00 for cost of court reporter); *Bedwell*, 2009 WL 10671331, at *3-5 (awarding $5,173.62 in fees and costs under Rule 37(d)(3) for missed deposition); *Mazile*, 2008 WL 11470766, at *2 & n.2 (awarding $450.00 for 1.8 hours of attorney time at $250.00 per hour and $130.00 for cost of court reporter under Rule 37(d)(3) for missed deposition); *Microsoft Corp.*, 2007 WL 2782503, at *9 (awarding $366.55 for missed deposition under Rule 37(d)(3) because counsel traveled to the deposition site, waited there, and returned); *Meshell*, 2006 WL 8446158, at *2 (imposing $1,500.00 "as reasonable expenses and attorney's fees incurred" for "missed deposition and preparation of this motion") *Alredi Prods., Inc.*, 2006 WL 617968, at *2 & n.2 (awarding $500.00 for missed deposition under Rule 37(d)(3) where counsel sought $1,700.00 for 8.5 hours of work involved with motion for sanctions).

they claimed to do for their 500-word motion for sanctions for a missed video deposition.  If sincere about recovering damages, then Plaintiffs would have also cooperated during discovery by producing documents supporting their damage claims; providing opposing counsel with a computation for each category of damages; and, when they failed to do so, would not have rebuffed Defendants' request to fix the omission of disclosing their alleged damages.  If Plaintiffs were truly seeking a remedy for their losses, they would have attached evidence showing that they actually suffered injury to their response to Defendants' motion for summary judgment that sought to dismiss Plaintiffs' claims precisely for want of damages.[198]  However, instead of focusing their efforts on seeking redress for their "severe" damages based on the merits of their claims, they seek an exorbitant amount primarily for the "preparation, filing, and determination of"[199] of 500-word sanctions motion even though they previously filed another 500-word response for a fraction of that cost.  This is especially egregious when the court considers that Plaintiffs' negotiation strategy with Defendants' counsel was to demand that Ms. Howard pay fees totaling approximately $25,000.00 for one missed deposition and its attendant 500-word response and motion.  This does not reflect a genuine desire to recover damages but to inflict them on Defendants through the judicial process.  It is the epitome of bad faith and multiplying the proceedings.  Therefore, even if the court gives Plaintiffs and their counsel (and Mr. Kim fits into both categories) the good-faith benefit of the doubt for commencing this lawsuit, the court cannot continue to give Plaintiffs and their counsel that benefit for the $14,636.40 request for

---

[198] The court uses "damages" here in a generic sense to include "loss" and "injury" according to the dictates of the elements in Plaintiffs' stated causes of action.

[199] ECF No. 41-2 at 14 (Exhibit 2 at 1).

fees and costs that they have requested from Ms. Howard and this court.  Accordingly, the court sanctions Plaintiffs and their counsel for seeking these fees and costs in bad faith and for improperly multiplying these proceedings.

> ### 2.    The Sanction Imposed Is Limited to What Ms. Howard's Counsel Expended Because of the Sanctionable Conduct.

Although the court disagrees with Plaintiffs and their counsel's argument over whether sanctions should be imposed, the court agrees with Plaintiffs and their counsel that the court's proposed order improperly sought to reduce the sanction that Ms. Howard owes Plaintiffs to zero.  The court also agrees with Plaintiffs and their counsel that the court's award of sanctions under its inherent authority and § 1927 cannot be punitive but is limited to only compensating Ms. Howard for the expenses that she expended in responding to the sanctionable conduct.[200] Based on the authority that Plaintiffs and their counsel provided, the court also notes that when deciding sanctions amounts, the court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."[201]  The court has provided its overall sense of this lawsuit in the previous section of this Memorandum Decision and Order.[202]

---

[200] *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186, 1187 (holding that sanctions under a court's inherent authority "must be compensatory rather than punitive in nature" and that the "complaining party . . . may recover only the portion of his fees that he would not have paid but for the misconduct"); *Hamilton*, 519 F.3d at 1205 (providing that the purpose of § 1927 is "to compensate victims of abusive litigation practices, not to deter and punish offenders").

[201] *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187 (alteration in original) (quotations and citation omitted).

[202] Plaintiffs' counsel also took umbrage with the rhetorical device that the court employed in the Second Order (i.e., "Pigs get fat, hogs get slaughtered.").  Specifically, Plaintiffs' counsel asserts that the court "compar[ed] Plaintiffs' counsel to a 'hog' that deserves 'slaughter.'"  ECF No. 60 at 8.  Plaintiffs' counsel's assertion is untrue.  A cursory reading of the Second Order reveals that

In order to properly determine the amount of the sanctions award that Ms. Howard should receive from Plaintiffs and their counsel, Ms. Howard shall, within 14 days of the date of this Memorandum Decision and Order, submit to Plaintiffs and their counsel an affidavit and cost memorandum detailing the reasonable expenses, including attorney fees, she incurred for: (1) drafting and filing her response to Plaintiffs' Memorandum of Costs Re: Sanctions Award;[203] and (2) negotiating the request for $14,365.80 with Plaintiffs' counsel.  The parties shall have 14 days thereafter to attempt to stipulate to the amount of the sanctions award.  If the parties can stipulate to the amount, Plaintiffs and their counsel shall pay the stipulated award to Ms. Howard within 14 days thereafter.  If the parties are unable to stipulate to the amount, Ms. Howard shall promptly file her affidavit and cost memorandum with the court.  Plaintiffs and their counsel shall have 7 days thereafter to file any response.  Upon receipt of any such submissions, the court will determine the amount of the sanctions award.

---

the court stated that Plaintiffs' counsel "acted like the proverbial hog," which "should slaughter *Plaintiffs' claim for fees*."  ECF No. 59 at 7 (emphasis added).  The court did not and would not use vitriolic statements against counsel much less suggest that counsel deserved to be "slaughtered."  The court was using a rhetorical device indicating that the court granted fees to Plaintiffs, but now Plaintiffs were asking for far too much, which jeopardized their entire fee claim.  However, after further review of Plaintiffs and their counsel's legal arguments, reducing Plaintiffs' claims for fees against Ms. Howard to zero is improper as a sanction.  Although it is possible that the fees incurred by Ms. Howard in dealing with Plaintiffs' excessive attorney fee claim may have that net result, that issue will be determined later.

[203] ECF No. 51.

## **ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED:

1.      Defendants' motion for summary judgment[204] is GRANTED.

2.      PCR's motion for summary judgment[205] is DENIED.

3.      Plaintiffs' claims in this action are DISMISSED WITH PREJUDICE.

4.      Within 14 days of the date of this Memorandum Decision and Order, Ms. Howard shall pay Plaintiffs a sanctions award under the First Order in the amount of $3,387.90.

5.      Ms. Howard is awarded sanctions against Plaintiffs and their counsel under the Second Order, the amount of which will be determined as follows:

        a.      Within 14 days of the date of this Memorandum Decision and Order, Ms. Howard shall submit to Plaintiffs and their counsel an affidavit and cost memorandum detailing the award to which she believes she is entitled under the analysis set forth above.

        b.      The parties shall have 14 days thereafter to attempt to stipulate to amount of the sanctions award.

        c.      If the parties can stipulate to the amount, Plaintiffs and their counsel shall pay the stipulated award to Ms. Howard within 14 days thereafter.

---

[204] ECF No. 40.

[205] ECF No. 50.

      d.     If the parties are unable to stipulate to the amount, Ms. Howard shall promptly file her affidavit and cost memorandum with the court.  Plaintiffs and their counsel shall have 7 days thereafter to file any response.  Upon receipt of any such submissions, the court will determine the amount of the sanctions award.

6.     The court will issue a separate scheduling order setting a trial date for Defendants' counterclaims.

IT IS SO ORDERED.

DATED October 27, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge